UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAN-AMERICAN ASSURANCE CO. | * | CIVIL ACTION NO. 23-919 |
| | * | |
| VERSUS | * | SECTION: "A"(5) |
| | * | |
| SAMUEL RUSSO, PIERLUIGI | * | JUDGE JAY C. ZAINEY |
| MUCCARI & IRENE RUSSO | * | |
| | * | MAGISTRATE JUDGE MICHAEL NORTH |
| | * | |
| | * | |

............................

**ORDER AND REASONS**

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 13)** filed by claimant and Defendant-in-Interpleader, Pierluigi Muccari ("Muccari"). The stakeholder and Plaintiff-in-Interpleader, Pan-American Assurance Co. ("Pan-American"), opposes the motion in part, and the remaining claimants and Defendants-in-Interpleader, Samuel and Irene Russo ("the Russos"), oppose the motion in its entirety. The motion, submitted for consideration on August 2, 2023, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

I.     **Background**

In 1999, Pan-American executed a life insurance agreement with Maya Maria Loredan Romussi ("Romussi"), a domiciliary of Italy, who was married to Muccari and was the Russos' aunt. (Complaint ¶¶ 7, 16). Romussi's initial policy named her mother as the primary beneficiary and her sister, the Russos' mother, as contingent beneficiary. (*Id.* ¶ 10). In 2011, Romussi designated Muccari and Irene Russo as primary beneficiaries, each to receive 50% of the policy. (*Id.* ¶ 13). Approximately nine years later, Romussi changed her beneficiaries such that each of Muccari, Irene Russo, and Samuel Russo were to receive a one-third share of the policy value. (*Id.* ¶¶ 15-16). Approximately two years later, on July 11, 2022, Romussi executed a final

1

change in beneficiary form, designating Muccari as the sole recipient of the proceeds of the

insurance policy. (*Id.* ¶¶ 17-18). This final change of beneficiary is at issue in this suit.

On August 28, 2022, Romussi passed away. (*Id.* ¶ 19). Following Romussi's passing,

Muccari claimed the proceeds of the insurance policy. (*Id.* ¶ 21). The Russos, however, contested

the final change of beneficiary, alleging contractual incapacity and undue influence by Muccari

at the time the form was executed. (*Id.* ¶ 22-23). The Russos have further asserted forgery of

Romussi's signature and failure to comply with necessary form requirements of the policy in an

attempt to set aside the change of beneficiary form. (Rec. Doc. 11, ¶ 33). In response to these

claims, Pan-American initiated this suit in interpleader.

Muccari has moved for summary judgment, requesting that all proceeds be provided to

him as the beneficiary listed on the most recent change of beneficiary form. Pan-American has

opposed the motion on the limited grounds that it believes that it is entitled to withdraw

reasonable attorney's fees and costs from the proceeds. The Russos oppose the motion in its

entirety.

## II.      Discussion

### *Legal Standard*

Summary judgment is proper where there is "no genuine dispute of material fact" and

"the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, it is

appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any," when viewed in the light most favorable to the non-movant,

"show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*,

276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50

(1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court

must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477

U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to

support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the

non-movant must come forward with "specific facts" showing a genuine factual issue for trial.

*Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

(1986)). Conclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific

facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.

1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the

burden on the non-movant to designate the specific facts in the record that create genuine issues

precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th

Cir. 1996). The district court has no duty to survey the entire record in search of evidence to

support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992);

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

***Choice of Law***

The first issue before the Court is whether the issues surrounding the life insurance

contract is governed by Louisiana law or Italian law. A federal court, when exercising diversity

of citizenship jurisdiction, must apply the choice-of-law rules of the forum state in which it sits

when determining the applicable substantive law. *Pioneer Exploration, LLC v. Steadfast

Insurance Co.*, 767 F.3d 503, 512 (5th Cir. 2014). However, where the laws of the states

contended to have an interest in a dispute do not conflict, a choice-of-law analysis is not

necessary. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). In such a case, the court may use the substantive law of the state in which it sits. *Id.*

Muccari identifies two applicable Louisiana choice-of-law statutes. He first categorizes an insurance policy as a conventional obligation, which is governed by Louisiana Civil Code Article 3537. Article 3537 provides that the issue "is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue," setting forth three factors to be considered. La. Civ. Code art. 3537. Muccari also identifies Article 3539 for the special purpose of determining the law which governs mental capacity for signing a contract. Article 3539 provides that, in Louisiana, a person possesses contractual capacity if such capacity exists under *either* the law of the person's domicile at the time of entering the contract or the state whose law is applicable to the contract under Article 3537. La. Civ. Code art. 3539.

Muccari properly identifies each of these choice-of-law statutes in determining whether the laws of Italy or Louisiana apply. However, as the Russos correctly point out, Muccari concedes the fact that the laws of Italy and Louisiana are not in conflict, stating that "the change in beneficiary form is valid and enforceable under both Italian and Louisiana law." (Rec. Doc. 13-2, p. 6). In fact, Muccari only argues a difference in Italian and Louisiana law as to the question of capacity. However, because Article 3539 is a special capacity-related rule under which the laws of both Italy and Louisiana must be considered, there can be no conflict for the purposes of choice of law. Therefore, the Court finds no meaningful difference between the laws of Italy and Louisiana as it relates to the claims under the more general conventional obligations choice-of-law statute.

Because the laws are not in conflict, the Court will use Louisiana law.

### *Proper Execution of the Change of Beneficiary Form*

Muccari first moves for summary judgment against the claim that the change of beneficiary form was improperly executed under the terms of the form. The Russos contend that the form strictly prohibits the execution of any document which contains corrections or markings which functionally erase material in the form. Because the change of beneficiary form contains a small interlineation on the witness's signature line, the Russos claim that the document is null and void, pointing to a provision in the form against erasures and corrections. In response, Muccari cites non-Louisiana case law, suggesting that an innocent mark on the witness's signature block is harmless error.

Based on the Court's review of the form, it is evident that the provision against erasures and alterations is designed to protect Pan-American, and to serve as a basis by which Pan-American may reject a change of beneficiary form with excessive erasures or alterations. Despite the marking, Pan-American subsequently accepted the change of beneficiary form and applied it to Romussi's file. Further, nullifying the form on the basis of strict adherence to its terms would demand an absurd result. *See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So.3d 187, 192 (La. 3/19/13) ("[E]ven when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences."). The small interlineation is not sufficient to fully nullify the remainder of the contract.

Therefore, Muccari's motion for summary judgment as to this claim is GRANTED.

*Forgery and Fraud*

Muccari next moves for summary judgment as to the Russos' forgery and fraud claim.[1] The Russos suggest that the signature on the change of beneficiary form was forged by Muccari,

---

[1] Muccari first argues that the Russos failed to properly allege fraud under Federal Rule of Civil Procedure 9(b). Because this is a motion for summary judgment, the claims will be considered on the basis of the evidence provided, and not on the sufficiency of the pleading of this issue.

thus nullifying the form. Muccari has provided the Declaration of Ulisse Corea (Rec. Doc. 13-4),

who stated that she witnessed Romussi personally sign the change of beneficiary form in her

presence. Muccari has further attached a declaration of his own in which he stated that Romussi

called Pan-American to inquire about the means of changing her beneficiary for the life

insurance policy in question. In response, the Russos have provided the declaration of a Board

Certified Forensic Document Examiner. In her declaration, the handwriting analyst explained her

methodology and her conclusion that she is "virtually certain that the questioned signature and

the known exemplars were not written by the same person," which is defined as a "strong

probability" in her report. (Rec. Doc. 20-2). The report was also attached. (Rec. Doc. 20-3).

The Russos have submitted evidence that sufficiently contradicts the eyewitness

declaration provided by Muccari. At this juncture, it is not appropriate for the Court to weigh

evidence or determine credibility of opposing witnesses. As described above, the pertinent

question is whether a reasonable jury could find in favor of the non-movant on this matter. Here,

both sides have produced credible evidence, and the Court believes that a reasonable jury could

find that the Russos' expert is more credible than Muccari's evidence. Therefore, because the

Russos have shown a genuine dispute of material fact, the motion for summary judgment is

DENIED as to the fraud/forgery claim.[2]

### *Capacity to Enter a Contract*

Muccari next moves for summary judgment on the Russos' contractual incapacity claim.

Both Muccari and the Russos have provided a series of declarations which speak to either

Romussi's mental state at the time the contract was executed or her decline toward the end of her

life. As described above, Article 3539 of the Louisiana Civil Code governs the choice of law in

---

[2] Muccari has failed inform the Court of any way in which Italian law differs from Louisiana law under this claim. Therefore, the Court has applied Louisiana law.

this matter. Under Article 3539, if, as a matter of law, Romussi had capacity under *either*

Louisiana law (the law governing the contract) or Italian law (Romussi's domicile), summary

judgment should be granted.

Louisiana Civil Code Article 1926 governs attacks on a non-interdicted decedent's

contracts. Under Article 1926, a contract may only be overturned after the decedent's death in

one of four situations: (1) the contract is gratuitous; (2) the contract evidences a lack of

understanding; (3) the contract was executed within thirty days of the decedent's death; or (4) an

application for interdiction was filed before the decedent's death. La. Civ. Code art. 1926.

Individuals are presumed to have the capacity to contract in Louisiana. *Standard Life & Accident*

*Ins. Co. v. Pylant*, 424 So.2d 377, 379 (La. App. 2 Cir. 11/29/82). Exceptions to this presumption

"must be shown quite convincingly and by the great weight of the evidence." *First National*

*Bank of Shreveport v. Willams*, 346 So.2d 257, 264 (La. App. 3 Cir. 5/13/1977).

As a matter of Louisiana law, "[t]he changing of a beneficiary under a life insurance

policy is not a gratuity." *Martin v. Metropolitan Life Insurance Co.*, 516 So.2d 1227, 1229 (La.

App. 2 Cir. 12/2/87). Additionally, more than thirty days elapsed between the form execution

date and Romussi's passing: the form was executed on July 11, and she passed on August 28.

Further, there is no evidence that an application for interdiction was filed before Romussi's

death. This only leaves the possibility of nullification by a lack of understanding.

Courts are inconsistent in applying the "lack of understanding" claim under Article 1926.

Nevertheless, some decisions have made clear the type of analysis that courts undertake in

determining whether an individual lacked understanding. In *Martin v. Metropolitan Life*

*Insurance Co.*, the court considered testimony relating whether the policyholder was incapable of

understanding the impact of the change of beneficiary form. 516 So.2d at 1229-30. It further

considered testimony showing the decedent's severe change in attitude and that he had declined

both physically and mentally following a stroke. *Id.* at 1230. *Martin*, despite ultimately finding

that the plaintiff failed to show mental incompetence, *id.*, suggests the meaning behind "lack of

understanding" is whether the person possessed the sufficient mental faculties to enter a contract.

Additionally, both parties discuss *American General Life Insurance Co., Inc. v. Wilkes*, in which

the Fifth Circuit Court of Appeals, applying Louisiana law, decided that a life insurance

policyholder had capacity to sign a change in beneficiary form because the non-movant's

evidence was insufficient to prove a lack of understanding. 290 F. App'x 688, 690-91 (5th Cir.

2008) (per curiam).[3]

Here, both parties have produced declarations as to Romussi's competency at the time

she signed the change of beneficiary form. For his part, despite the presumption in favor of

contractual capacity in Louisiana, Muccari has offered a declaration from the witness of the

form's execution, who attested that Romussi appeared lucid and fully understood the acts which

she undertook. (Rec. Doc. 13-4). Muccari has additionally provided other declarations speaking

positively of Romussi's mental state at this time. In response, the Russos have provided six

declarations from individuals who knew Romussi to varying degrees and whose interactions with

Romussi ranged from daily contact to occasional visits. These declarations detail Romussi's

struggles with cancer and the adverse impacts they had, both physically and, at times, mentally.

Specifically, on July 15, 2022, four days after executing the form, Romussi had a birthday party

attended by declarant Laura Tosi. (Rec. Doc. 20-12). The following day, Romussi texted Tosi,

unaware that there had been a party or that they had seen one another the prior day. (Rec. Doc.

20-12). Other instances of hallucinations and a general inability to understand her surroundings

---

[3] The Court notes that the Fifth Circuit designated this opinion to be unpublished. 290 F. App'x at 689. Under 5th Cir. R. 47.5, it is therefore non-precedential.

were provided by Romussi's sister. (Rec. Doc. 20-13). This evidence is sufficient to raise a

question of fact at this time as to whether, under Louisiana law, Romussi had sufficient capacity

to enter a contract.

Because Louisiana's capacity-specific choice-of-law statute requires an investigation into

whether the policyholder was competent in the state of the contract *or* in the domicile of the

policyholder, the question remains whether Romussi had sufficient capacity in Italy, her

stipulated domicile. Muccari has provided a declaration from a law professor in Rome explaining

the law regarding contractual capacity in Italy. The law is substantially the same in Italy as in

Louisiana, requiring proof that the individual was incapable of understanding or was without

volition at the time of the contract's execution, with the added requirement that the execution of

the contract without capacity results in serious prejudice to the author. According to Professor

Marini, incapacity must be proven by the party seeking annulment, and the assessment of

incapacity should be rigorous. (Rec. Doc. 13-5). Further, serious prejudice must result from the

execution of the contract to the incapacitated individual, which can consist of *any* legally

appreciable adverse effect on the agent's condition.

Much as was the case under Louisiana law, the Russos have properly provided

declarations that detail occurrences which are sufficient to raise a question of fact as to whether

Romussi had capacity to understand her actions at the time she executed the change of

beneficiary form. Professor Marini's affidavit makes clear that the cause of confusion or capacity

must exceed solely the fact that she previously had health problems. Here, the Russos' evidence

shows that Romussi was unable to recall an hours-long event during which she celebrated her

birthday with her friends, as well as other occurrences which demonstrate that her capacity to

contract had become questionable, including hallucinations and general confusion about basic matters. (Rec. Doc. 20-13). This is sufficient to create a dispute of material fact.

However, summary judgment is still warranted if, as a matter of law, Romussi was not seriously prejudiced by entering a contract when she lacked capacity. This Court finds that, if she lacked capacity to enter this contract, Romussi was seriously prejudiced in entering this contract. Romussi's three previous beneficiary designations under this life insurance policy included payouts to either her sister or to one or both of her sister's children. (Complaint ¶¶ 10, 12-18). Toward the end of her life, when she was arguably without capacity to enter such a contract, Romussi allegedly changed the beneficiary to her husband alone. If she was without capacity to make this change, she will have suffered the prejudice of failing to provide for those she wished to support after her passing. The Russos have offered a declaration that states that Romussi expressly wanted to provide for her niece and nephew. (Rec. Doc. 20-12). This is sufficiently prejudicial under the broad interpretation provided by Professor Marini, thus precluding summary judgment.

Because there are questions regarding Romussi's capacity to contract under each of Louisiana and Italian law such that a reasonable jury could find in favor of the non-movant, and because Muccari is not entitled to judgment as a matter of law, the motion for summary judgment is DENIED as to the capacity claim.

*Undue Influence*

Finally, the Russos allege that Muccari unduly influenced Romussi, pressuring her to sign the change of beneficiary form in his name when she was without capacity. The Russos fail to cite any statutory or common-law mode of challenging a contract through undue influence in Louisiana. Louisiana's laws governing undue influence apply to donations inter vivos and gifts

10

causa mortis. Because life insurance policies do not qualify under these categories, undue

influence is not a viable method of challenging this contract. *T.L. James & Co., Inc. v.*

*Montgomery*, 332 So.2d 834, 847 (La. 12/8/75). The discussion in *Wilkes* to the contrary cites

Louisiana cases for support, but neither of the cases cited discusses undue influence. Rather,

*Wilkes* appears to mix undue influence and fraud into a single cause of action.

      The motion for summary judgment is GRANTED as to the undue influence claim to the

extent it is asserted as a standalone claim.[4]

      Because the motion has been denied in part and some claims remain, Pan-American's

request for attorney's fees is not ripe for consideration at this time.

      Accordingly, and for the foregoing reasons;

      **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 13)** filed by

Defendant-in-Interpleader, Pierluigi Muccari, is **GRANTED IN PART AND DENIED IN**

**PART** as explained above.

      September 29, 2023

_____
              JAY C. ZAINEY
        UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that, even under Italian law, the motion would be granted as to this claim. Professor Marini makes clear in his affidavit explaining Italian law that undue influence is non-existent under Italian law. In Italy, a concept analogous to undue influence exists only with wills and successions. Because Italian law differentiates life insurance contracts from successions, this matter falls outside the acceptable scope of an undue influence claim.